IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JARROD PROCTOR and** <br> **GWENDOLYN PROCTOR,** <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES OF AMERICA,** <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **Case No. CIV-21-307-GLJ** <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

This matter comes before the Court on dueling motions for summary judgment. Plaintiffs Jared and Gwendolyn Proctor have moved for partial summary judgment against Defendant United States of America,[1] while Defendant has moved for summary judgment on all claims. For the reasons set forth below, the Court finds that Plaintiffs Jarrod and Gwendolyn Proctor's Partial Motion for Summary Judgment and Brief in Support [Docket No. 49] should be DENIED, and Defendant United States of America's Motion for Summary Judgment and Brief in Support [Docket No. 59] should be GRANTED IN PART and DENIED IN PART.

### I. Procedural History

Plaintiffs filed the present case on October 13, 2021 [Docket Nos. 1-2]. On April 1, 2024, the parties consented to U.S. Magistrate Judge jurisdiction over this case, and the

---

[1] The other named Defendants in this case were previously dismissed. *See* Docket Nos. 34, 35.

undersigned Magistrate Judge was assigned [Docket No. 51].[2] Plaintiffs moved for partial summary judgment [Docket No. 49] on March 20, 2024, and Defendant filed a motion for summary judgment [Docket No. 59] on April 11, 2024. The parties' respective motions are now ripe.

Plaintiffs' Complaint allegations relate to a motor vehicle accident on December 14, 2019, in which their vehicle was struck by a Cherokee Nation Marshal vehicle driven by Cherokee Nation Marshal Service ("CNMS") Deputy Marshal Buddy Lee Clinton. *Id.*, pp. 1-2, ¶¶ 1-4. The claims against the Defendant are made pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, alleging negligence and vicarious liability, based on failure to keep a careful lookout, failure to drive the proper speed, failure to yield, and negligence per se. Docket No. 2, pp. 2-4, ¶¶ 8-12. Additionally, Plaintiffs allege property damage to their vehicle. *Id*, p. 4, ¶¶ 13-14.

## II. Factual Background

The undisputed facts relevant to the pending motions reflect that around 8:43 p.m. on December 14, 2019, Plaintiffs and Deputy Clinton had an automobile collision. Plaintiff Gwendolyn Proctor was driving northbound on Stick Ross Mountain Road in Tahlequah, Oklahoma with her husband in the front passenger seat. As she went through the intersection at the Highway 51 spur, controlled by a four-way traffic light, Deputy Clinton was driving west on Highway 51 spur in his patrol unit and his vehicle collided

---

[2] The undersigned Magistrate notes that the Eastern District of Oklahoma has been subject to an exceptionally heavy caseload in the wake of *McGirt v. Oklahoma*, _ U.S. _, 140 S. Ct. 2452 (2020), resulting in significant delays to this Court's civil docket during that time.

with Plaintiffs' vehicle. *See* Docket Nos. 49, p. 3, ¶¶ 1-5; 59, p. 2, ¶¶ 1-4.

Deputy Clinton had been on duty that day, from 8:12 a.m. to 6:05 p.m. While he was still on duty, Deputy Clinton picked up two friends in his patrol unit, Wade Smittle and Philipe Ayala. He took a lunch break at 5:11 p.m., then returned to his shift at 6:05 p.m. and immediately went "off duty" at 6:05 p.m. following his return to shift. There are no facts as to whether Smittle and Ayala remained in Deputy Clinton's patrol unit until he went off duty, but the undisputed facts reflect that after Deputy Clinton went off duty he drove his patrol unit to Northeastern State University ("NSU"), with Smittle and Ayala, to play basketball with CNMS Sergeant Tony Asbill and CNMS Deputy Erik Fuson. Despite being on duty, neither Asbill nor Fuson were in uniform. *See* Docket Nos. 49, pp. 3-4, ¶¶ 6-11; 59, pp. 2-3, ¶¶ 5-11.

At 8:07 p.m., CNMS dispatch came over Deputy Fuson's radio requesting a license plate check of a suspicious vehicle at a youth shelter. Deputy Clinton requested permission to go on duty, and Sergeant Asbill cleared him to respond to the call from dispatch. Deputy Clinton went on duty at 8:10 p.m. and was officially dispatched at 8:17 p.m. Deputy Clinton left the NSU gym with Ayala and Smittle and responded to the call, clearing it at 8:32 p.m. At 8:30 p.m. a call for a robbery in progress came in through the CNMS dispatch and was assigned to Deputy Fuson. Deputy Clinton again asked if he needed to cover the robbery call since neither Sergeant Asbill nor Deputy Fuson had donned their uniforms despite being on duty, and Deputy Clinton was assigned the call at 8:32 p.m. *See* Docket Nos. 49, pp. 4-5, ¶¶ 10-12, 15-16; 59, p. 3, ¶¶ 12-19, 22. Because Ayala and Smittle were still in Deputy Clinton's patrol unit, he decided to return them to

his apartment before going to the scene of the robbery in progress, but his apartment was not in the path from the youth shelter to the robbery call. Deputy Clinton would have turned eastbound by Highway 51 Spur to respond directly to the robbery call, but he was driving westbound on Highway 51 Spur at the time of the collision. He later testified that he did not need to retrieve anything from his apartment for the robbery call, and that he could have left his friends at the youth shelter or other place along the route instead of taking them to his apartment. As he was driving, Deputy Clinton activated his lights and sirens and was driving westbound on Highway 51 spur in the direction of his apartment (rather than the direction of the robbery call) when he went through the intersection at Stick Ross Mountain Road during a red light and his patrol unit collided with Plaintiffs' vehicle. *See* Docket Nos. 49, pp. 5-6, ¶¶ 19-20; 59, pp. 46, ¶¶ 23-24, 27, 30-32, 40, 42-43. A CNMS investigation revealed that CNMS learned after the collision that Deputy Clinton's friends had been in the vehicle that evening and at the time of the accident. *See* Docket No. 59, p. 4, ¶ 26 & Ex. 5.

## Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party,

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c).

The FTCA is "a limited waiver of the federal government's sovereign immunity, allowing civil claims against the United States for 'the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.' Under the FTCA the United States is liable on tort claims 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  *Barnes v. United States*, 707 Fed. Appx. 512, 515-516 (10th Cir. 2017) (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances[.]").  Defendant therefore waives sovereign immunity under the FTCA for claims arising out of the performance of Indian self-determination contracts and compacts, as in the case of the CNMS receiving funding from the U.S. through its self-determination compact entered pursuant to the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 5301 et seq.  Under this waiver, "an Indian tribe, tribal organization or Indian contractor . . . and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement[,]" and any claim brought thereunder "shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims

Act[.]" Department of the Interior and Related Agencies Appropriation Act, 1991, Pub. L. 101–512, 104 Stat 1915 (Nov. 5, 1990).

### III. Analysis

The determinative question in both parties' motion for summary judgment is largely whether Deputy Clinton was acting within the scope of his employment at the time he collided with Plaintiffs. Plaintiffs contend Deputy Clinton was acting within the scope of his employment at the time of the accident and therefore sovereign immunity is waived, the FTCA and Oklahoma substantive law applies, and Defendant is liable. Defendant opposes this assertion, arguing that Deputy Clinton was transporting his friends for his own benefit and outside the scope of his employment, while driving away from the direction of the robbery call. Additionally, Defendant contends that Plaintiffs failed to exhaust administrative remedies for their property damage claim.

#### A. Scope of Employment

To determine whether Defendant would be liable under the FTCA "for the acts of a federal employee, we look to the *respondeat superior* law of the state where the wrongful act occurred," *Barnes*, 707 Fed. Appx. at 516-517, which in this case is Oklahoma law. "Under the theory of *respondeat superior,* one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163. "'[A]n employer can be held liable even if the employee acts beyond the given authority' so long as the act was 'incident to some service being performed for the employer.'"

*Barnes*, 707 Fed. Appx. at 517 (quoting *Rodebush v. Okla. Nursing Homes, Ltd.*, 1993 OK 160, ¶ 12, 867 P.2d 1241, 1245). Plaintiff bears the burden of showing that an employee is acting within the scope of their employment. *Rodebush*, 1993 OK 160, ¶ 12, 867 P.2d at 1245. The test for scope-of-employment analysis in the law enforcement context states that "'liability exists for acts of officers that can be described as abuses of lawful power,' but not for 'an unlawful usurpation of power the officer did not rightfully possess.'" *Barnes*, 707 Fed. Appx. at 517 (quoting *Decorte, v. Robinson*, 1998 OK 87, ¶ 12, 969 P.2d 358, 361-362 (quoting *McGhee v. Volusia Cty.*, 679 So.2d 729, 733 (Fla. 1996)).

The Oklahoma Supreme Court recognized that "the question of whether a police officer was acting in the scope of his employment was a question of fact for the jury when there were conflicting inferences that could be drawn." *DeCorte*, 1998 OK 87, ¶ 11, 969 P.2d at 361 (citing *Nail v. City of Henryetta*, 1996 OK 12, ¶ 13, 911 P.2d 914, 917 ("The question of whether an employee has acted within the scope of employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts."). Both parties cite the above-named cases, yet fail to acknowledge this basic principle or explain how only one reasonable conclusion can be drawn from the facts. Whether Deputy Clinton was acting within the scope of his employment is a question susceptible of conflicting reasonable conclusions, as evidenced by the arguments submitted by the parties, and is more appropriately resolved after *all* the evidence has been presented. *See, e.g.*, *DeCorte*, 1998 OK 87, ¶ 14, 969 P.2d at 362 ("The pursuit of DeCorte, the stopping of DeCorte and approach by Robinson, the arrest, the

choke hold, and the later alleged assault and battery did not happen in a single instance, but took place over a period of time. In *Nail*, we contemplated a situation in which an officer's initial actions were within the scope of employment, but that during the unfolding of events his actions may have gone beyond that scope. Such is the case here. Robinson's initial actions may well have been taken on behalf of his employer, and been within the scope of his duties. However, *the jury obviously determined* that during the course of events his actions exceeded that scope. While we agree with the City's assertion that an individual cannot simultaneously act in good faith and in a malicious manner, the jury was clearly justified in finding that at some time during the episode Robinson went beyond the bounds of good faith.") (emphasis added) (*citing Nail*, 1996 OK 12, ¶¶ 11-14, 911 P.2d at 917). *Cf. Gowens v. Barstow*, 2015 OK 85, ¶ 22, 364 P.3d 644, 654 (Following non-jury trial and appeal, the Oklahoma Supreme Court found "[t]here is no indication that his actions, although having been found unreasonable under the circumstances, were so extreme that they unlawfully usurped any power he did not rightfully possess as an emergency vehicle driver."). The Court therefore finds that resolution of the scope-of-employment issue is inappropriate for summary judgment even where, as here, the case is set for non-jury trial. *See, e.g., Gowens*, 2015 OK 85, 364 P.3d 644, 654; *Brooks v. Harvest State Co-op., HSPV*, 1997 WL 20747, at *2 (E.D. La. Jan. 17, 1997) ("[B]ecause this is a non-jury trial, and there are questions of fact surrounding the decision not to hire the plaintiff, the motion for summary judgment will be denied at this time."); *Acker v. Grenada Cnty.*, 1996 WL 407985, at *3 (N.D. Miss. May 21, 1996) ("Considering that this case is set for a nonjury trial, this court will be able to review the complete evidence,

and revisit the qualified immunity issue at that time. It is a material question of fact whether the individual defendants' conduct was objectively reasonable. Accordingly, the motion for summary judgment as to the issue of qualified immunity is denied."). Accordingly, Plaintiffs' Motion for Partial Summary Judgment is denied, and Defendant's Motion for Summary Judgment is denied as to Plaintiffs' negligence and vicarious liability claims.

### B. Property Damage Claim

Defendant also contends that Plaintiffs failed to exhaust administrative remedies as to their claim for property damage, and therefore this Court lacks subject matter jurisdiction. In support, Defendant asserts that Plaintiffs only asserted personal injuries in their administrative claim, and not property damage, and therefore the property damages claim must be dismissed. Plaintiffs contend the notice as a whole was sufficient.

"The administrative-exhaustion requirement applicable to FTCA claims 'bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.'" *Barnes v. United States*, 776 F.3d 1135, 1139 (10th Cir. 2015) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "Exhaustion of administrative claims is a jurisdictional prerequisite to asserting claims under the FTCA." *Pipkin v. U.S. Postal Service*, 951 F.2d 272, 273 (10th Cir. 1991). The Claim forms submitted by Plaintiffs detail the basis of the claims and the extent of their personal injuries, but the space for property damage is blank for Plaintiff Jarrod Proctor and states "NONE" for Plaintiff Gwendolyn Proctor. *See* Docket No. 59, Ex. 15, pp.1, 4. Jarrod's form indicates a claim for $2,483,462.00 for personal injury, and is blank as to property damage. *Id.*, p. 1, ¶ 12.

Gwendolyn's form indicates a $235,972.00 claim for personal injury and is blank as to property damage. *Id.*, p. 4, ¶ 12. Both forms repeat these respective amounts, with no additions, in the box marked "TOTAL." *Id*, pp. 1, 4. Plaintiffs cite the same Claim form to oppose these arguments, asserting that the individual claims for money damages for a sum certain were sufficient to establish subject matter jurisdiction. Additionally, Plaintiffs contend the Accident Report, *see* Docket No. 63, Ex. 6, was attached to the claim forms and included the vehicle make and model, that the jaws of life were used on the vehicle, and that the impact was severe. Plaintiffs appear to argue by implication that Defendant should have inferred the claim for property damage, as well as its value.

For this Court to have jurisdiction over a claim, Plaintiffs must first have "present[ed] their claims to the appropriate federal agency before suing the United States by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992) (quotation omitted). These notice requirements "must be strictly construed[,]" "are jurisdictional[,] and cannot be waived." *Id.* Defendant contends that property damage claims are separable from personal injury claims for purposes of exhaustion. *See, e.g.*, *Schwartzman v. Carmen*, 995 F. Supp. 574, 576 (E.D. Pa. 1998) ("Mitchell Schwartzman did not provide a sum certain for his personal injuries in his claim form, and this defect was not cured when he filed a complaint in the Court of Common Pleas of Philadelphia County. Unlike the personal injury claim, Mitchell Schwartzman's claim form stated an exact amount, that is, $7,036.68, for property damage. . . . He may pursue his recovery for property damage, limited to the $7,036.68 demanded

in his claim form."). Plaintiffs certainly meet the first requirement, enabling the Government to begin its own investigation into the events of the collision. However, Plaintiffs fail to explain how Defendant could have evaluated, or even anticipated, a separate claim for property damage based upon the recitation of events combined with the presence of blank spaces and/or "NONE" in boxes allowing for separate claims for property damage. Because Plaintiffs provide no evidence that they presented Defendant with appropriate notice of a sum certain claim for property damage, the Court agrees with Defendant that subject matter jurisdiction is lacking as to this claim. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiffs' claim for property damage.

## CONCLUSION

Accordingly, the Court finds that Plaintiffs Jarrod and Gwendolyn Proctor's Partial Motion for Summary Judgment and Brief in Support [Docket No. 49] is DENIED, and Defendant United States of America's Motion for Summary Judgment and Brief in Support [Docket No. 59] is GRANTED IN PART, as to Plaintiffs' claim for property damage only, and otherwise DENIED.

DATED this 11th day of June, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**